**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

VAX-D MEDICAL TECHNOLOGIES, LLC,

    Plaintiff,

v.                                                                 CASE NO: 8:04-cv-1617-T-26TGW

ALLIED HEALTH MANAGEMENT, LTD.,
et al.,

    Defendants.
_____/

## O R D E R

Before the Court is Defendant Dr. Kenneth Gilbertson's Motion to Dismiss for Lack of Personal Jurisdiction with attachment (Dkt. 114) and Plaintiff's Memorandum in Opposition with attachments (Dkt. 137, 138-146). After careful consideration of the submissions of the parties and the applicable law, the Court concludes that the Motion should be granted as to all issues concerning personal jurisdiction except the issue involving service of process, which is set for an evidentiary hearing on March 16, 2006.

**Personal Jurisdiction**

This action arises out of original federal question jurisdiction claiming violations of trademark infringement under the Lanham Act, 15 U.S.C. §1501 et seq., unfair competition and deceptive and unfair trade practices under 15 U.S.C. § 52, and the federal Patent Act, 35 U.S.C. §1 et seq. Because these statutes are silent with respect to service of process, Federal Rule of Civil Procedure 4(e) requires that personal jurisdiction be

determined by Florida's long-arm statute, section 48.193, and by whether sufficient minimum contacts exist to satisfy federal constitutional dictates of "traditional notions of fair play and substantial justice." See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623 (11th Cir. 1996) (citing Cable/Home Communication Corp. v. Network Prod., Inc., 902 F.2d 829, 855 (11th Cir. 1990)). Following the principles set forth in Sculptchair and Florida law, the plaintiff initially bears the burden of adequately pleading jurisdiction. See Sculptchair, 94 F.3d at 627. "When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." Sculptchair, 94 F.3d at 927 (quoting Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990), cert. denied, 499 U.S. 937 (1991)). Where there is a conflict in the evidence, all inferences must be drawn in favor of the plaintiff. See Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002); Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1998); Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

In this case, Plaintiff asserts long-arm jurisdiction pursuant to section 48.193(1)(a), (b), (f)1., and 48.193(2). The relevant subsections provide in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or *through an agent* does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state   . . .

> (b) Committing a tortious act within this state.
>
> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
> 1. The defendant was engaged in solicitation or service activities within this state; . . .
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state . . . is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

(Emphasis added). Plaintiff alleges jurisdiction in paragraph 11 of the Second Amended Complaint as follows:

> This Court has jurisdiction over the Defendants in this action pursuant to Florida Statute section 48.193, by virtue of the Defendants having committed a tortious act in this state, by virtue of the Defendants having breached a contract in this state, by virtue of the Defendants having substantial and not isolated contact with this state, by virtue of Defendants' agreements to be subject to this Court's jurisdiction and/or by virtue of having conducted or maintained a business in this state.

(Dkt. 83). Plaintiff sues the Defendant Dr. H. Kenneth Gilbertson in three counts only: Count VII for false advertising in violation of the Lanham Act, Count VIII for unfair competition in violation of the Lanham Act, and Count XII for violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA).

### Allegations of the Second Amended Complaint

Plaintiff VAX-D manufactures, markets, sells and licenses medical devices and provides training for their uses. The term "VAX-D" is a trade and service mark of

Plaintiff VAX-D, which is registered with the U.S. Patent and Trade Mark Office.  VAX-D also holds patents on a vertebral axial decompression table and the related tensioning harness, which holds the patient on the table.  The patents were originally obtained by and issued to Dr. Allen D. Dyer, M.D, who later assigned them to VAX-D for the inventions of the table and harness at issue, which will be referred to as the Therapeutic Table and the Therapeutic Harness.

Defendant Dr. H. Kenneth Gilbertson is a resident of Missouri and a practicing chiropractor for the Back Pain Institute of St. Louis, L.L.C. (BPI).  The allegations of the Second Amended Complaint generally assert that Dr. Gilbertson and his companies Allied Health[1] and BPI purchased and use knockoff Therapeutic Tables and Harnesses manufactured by co-defendant AMT.[2]  Dr. Gilbertson allegedly advertises clinics as VAX-D clinics to market lower back treatments using AMT knockoff Therapeutic Tables and Harnesses "to unsuspecting patients through use of VAX-D's mark."  Plaintiff alleges that as a consequence of these deceptive measures, "the consuming public was duped into believing that they were receiving VAX-D treatment when they were in fact not."

Specific to Count VII for false advertising, Plaintiff alleges that Dr. Gilbertson created, offers advertising on, and operates two websites which advertise clinics, centers and physicians in various states throughout the United States as VAX-D providers, when

---

[1]  Allied Health, a former company of Dr. Gilbertson's, no longer exists.

[2]  AMT had begun manufacturing component parts for and assembling the VAX-D Therapeutic tables for distribution to customers of VAX-D.

they are not.  At the time Plaintiff filed the Second Amended Complaint, it incorrectly believed that the websites were operated by Dr. Gilbertson.  Instead, the websites www.vaxd.net and www.vax-d.net are owned by Elite Web Productions, which is a fictitious name registered by Defendant Dr. Gilbertson's son, Kenneth "Marty" Gilbertson, in Missouri.  In any event, Count VII alleges that the advertisements placed on these two websites are false and misleading.

The allegations specific to Count VIII for unfair competition against Dr. Gilbertson assert that his use and his businesses' use of the knockoff Therapeutic Tables and Harnesses creates a likelihood of confusion for consuming patients.  Plaintiff claims that the amount of sales of VAX-D's Therapeutic Tables and Harnesses has been reduced and the licensing for the patient treatment has been reduced.  Count XII, alleging a violation of FDUTPA, asserts essentially the same allegations as the other two counts—that Dr. Gilbertson's purchase and use of the AMT knockoff Therapeutic Tables and Harnesses as the VAX-D Therapeutic Tables and Harnesses, and his use of VAX-D's trade dress, creates confusion for consumers and results in reduced sales for VAX-D.

**Analysis**

Plaintiff's allegations are initially sufficient to assert personal jurisdiction over Dr. Gilbertson under sections 48.193(1)(a), (b), and (2).  Whether Plaintiff has sufficiently alleged jurisdiction under 48.193(f)1., is doubtful, however.  The general jurisdictional paragraph does not recite the key words of "solicitation" or "injuries" caused within the state which are found in subsection (f)1., and neither does the remainder of the Second

Amended Complaint contain allegations of solicitation of business resulting in injury in Florida. Dr. Gilbertson did not even address jurisdiction pursuant to subsection (f)1., probably because it was not alleged in the general jurisdictional paragraph and not apparent from the allegations of the remainder of the Second Amended Complaint. To the extent Plaintiff argues subsection (f)1., the Court will, nevertheless, address this basis of jurisdiction.

## Agency Relationship

Plaintiff asserts first and foremost that an agency relationship exists between Defendant Dr. H. Kenneth Gilbertson and his son, Kenneth "Marty" Gilbertson, who is not a chiropractor. This assertion of agency is vital to achieve personal jurisdiction over Dr. Gilbertson pursuant to each of the four sections of the long-arm statute proposed by Plaintiff, subsections (1)(a), (b), (f)1., and (2). Under Florida law, the three factors necessary to prove an actual agency are (1) "acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." See Goldschmidt v. Holman, 571 So.2d 422, 424 n.5 (Fla. 1990); Ilgen v. Henderson Properties, Inc., 683 So.2d 513, 515 (Fla.Dist.Ct.App. 1996). In Florida, a principal's actions may also give rise to apparent authority and therefore the existence of an agency. See Insurance Co. of N. Amer. v. American Marine Holdings, Inc., No. 5:04-cv-86-OC-10GRJ, 2005 WL 3158049 at * (M.D. Fla. Nov. 28, 2005) (citing Chase Manhattan Mortgage Corp. v. Scott, Royce,

Harris, Bryan, Barra & Jorgensen, P.A., 694 So.2d 827, 832 (Fla.Dist.Ct.App. 1997));

Nida Corp. v. Nida, 118 F.Supp.2d 1223, 1227 (M.D. Fla. 2000).

Most of the cases involving agency relationships hone in on the issue of control and whether an individual is an agent or an independent contractor.[3] The fact that Dr. Gilbertson provided Marty Gilbertson with information to post on the websites is not dispositive of the control issue with respect to agency. If this act confers agency, then every advertiser on a website created by Marty Gilbertson could establish an agency with him by providing information to post on the respective site. The record does not reveal any control exercised by Dr. Gilbertson over Marty Gilbertson in the creating or hosting of the websites at issue. Based on the affidavits of Dr. Gilbertson and Dr. Dyer and the deposition of Marty Gilbertson, the Court finds that at this juncture, a case for an agency relationship has not been unequivocally made.

**Corporate Shield**

Dr. Gilbertson admits that he has traveled twice to Florida for vacations— in June 2005 and in December 2002. Florida courts, however, do not consider sporadic or occasional vacations sufficient to bestow personal jurisdiction. See Radcliffe v. Gyves, 902 So.2d 968, 972 (Fla.Dist.Ct.App. 2005) (citing additional cases therein). Dr. Gilbertson also admits that he traveled to Florida to attend three different professional

---

[3] The employer-employee relationship is not at issue here, however.

medical seminars. He claims that he attended them in his corporate capacity for his two businesses, Allied and BPI.

In Florida, an activity undertaken in "one's capacity as a corporate officer or director is exempted" from consideration as a basis for piercing the veil to establish personal jurisdiction. See Radcliffe, 902 So.2d at 972 (citing Doe v. Thompson, 620 So.2d 1004 (Fla. 1993) (and additional cases therein). Plaintiff distinguishes Dr. Gilbertson's activities by arguing that the corporate shield cannot be used to avoid the commission of an intentional tort by a corporate officer. See Doe, 620 So.2d at 1006 n.1 (citing numerous cases). The alleged false advertising and other alleged intentional acts were "committed" on the websites, however. Plaintiff's theory of agency must be employed to link the acts to Dr. Gilbertson personally. As noted above, the Court finds that an agency relationship has not been demonstrated.

In short, Plaintiff has not sufficiently rebutted Dr. Gilbertson's affidavit in which he avers that he was in Florida acting within the scope of his corporate business, not for himself. Neither has Plaintiff shown that there are sufficient minimum contacts to hale Dr. Gilbertson in court in Florida.

**Solicitation**

The solicitation Plaintiff refers to is the solicitation of customers and patients through the use of the two above-referenced websites. Plaintiff attaches Marty Gilbertson's deposition to contradict the affidavit of Dr. Gilbertson. Plaintiff claims the solicitation occurred through the use of the two websites created by Marty Gilbertson, and

-8-

as such, this type of solicitation may subject a defendant to personal jurisdiction if the solicitation was directed toward Florida residents. See Miller v. Berman, 289 F.Supp.2d 1327, 1333 (M.D. Fla. 2003); Miami Breakers Soccer Club, Inc. v. Women's United Soccer Assoc., 140 F.Supp.2d 1325, 1329 (S.D. Fla. 2001).

Whether an internet site is considered to be solicitation of business is determined using a spectrum ranging from passive sites, which do not constitute solicitation, to active sites, which constitute engaging in business solicitation. See Zippo Mfg. Co. v. Zippo Dot Com. Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). The oft-cited case of Zippo explains this spectrum scale as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. [case cite] At the opposite end are situations where a defendant simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. [case cite] The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. [case cite]

Zippo, 952 F.Supp. at 1124. Employing these guidelines in the determination of whether the use of the websites creates personal jurisdiction, this Court must keep in mind that the

websites are registered to Marty Gilbertson, not Dr. Gilbertson, and it is Marty Gilbertson who charges, collects, and receives money from advertisers who desire to use the site.

For purposes of this analysis, the Court will assume that the websites display the mark of VAX-D in the advertisement of treatment. The websites are hosted by a fictitious name registered by Marty Gilbertson, and were created by Marty Gilbertson, albeit at times with information provided from Dr. Gilbertson. Marty Gilbertson operated these two websites in addition to other totally unrelated websites, because his business is obtaining advertisers to create websites for their use. He knows nothing about Therapeutic Tables and Harnesses for use in the chiropractic field. His expertise is limited to the hosting of websites for paying customers who desire to advertise on a website. His customers must provide the information for him to post on the website he creates for them. The business from the VAX-D websites provides Marty Gilbertson with $250 per advertising customer.[4] He sends them forms to initially sign, and then renewal forms every year requesting prompt payment. Absolutely none of the activity or exchange between the advertisers and Marty Gilbertson takes place through the websites.

The "interactiveness" of the sites depends on whether the potential customer of the website could actively communicate with the site. There is no question that the two websites at issue post information as to where a potential patient could locate a VAX-D

---

[4] Plaintiff makes much ado about the fact that Marty Gilbertson does not charge his father, Dr. Gilbertson, the $250 for advertising. There is nothing in this record, however, to suggest that this fact somehow grants Dr. Gilbertson more control over Marty Gilbertson or establishes the agency relationship between them.

provider in numerous states, including Florida. After viewing the various "VAX-D" providers" in any particular state, however, the viewer finds either an e-mail address or website link to the particular provider. The viewer cannot communicate directly with the advertiser.

Drawing all inferences in the light most favorable to the Plaintiff, this Court finds that Plaintiff has not made a convincing case for personal jurisdiction on this basis. As in Berman, the advertisers on the two websites at issue did not solicit business over the Internet, rather it was the potential patients who contacted the providers who advertised on the sites through e-mail or a linked website that provided an e-mail address, telephone number, or address.[5] The fact that the two websites contained an e-mail address that allowed inquiring patients to communicate with Dr. Gilbertson is no different than the e-mail addresses posted for other advertisers on the sites. The websites at issue in this case are more akin to the passive websites described in Miami Breakers Soccer Club, Inc. v. Women's United Soccer Assoc., 140 F.Supp.2d 1325, 1329 (S.D. Fla. 2001). The advertisers could not use the website to secure the services of Marty Gilbertson to begin advertising on the sites, the patients could not use the site to purchase any services

---

[5] See Berman, 289 F.Supp.2d at 1335-36 (noting that defendants did not solicit business over the Internet, rather Miller contacted defendants through e-mail address found at website).

provided by the advertisers, and no one could place orders for the tables or harnesses on the websites.[6]

### Carrying on Business Venture

Under section 48.193(1)(a), "[t]he activities of the [defendant] sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit." Sculptchair, 94 F.3d at 627 (quoting Dinsmore v. Martin Blumenthal Assoc., Inc., 314 So.2d 561, 564 (Fla. 1975)). For the reasons set forth under the heading of solicitation above, the Court finds that the websites at issue did not solicit business as that term is considered under the long-arm statute. See Berman, 289 F.Supp.2d at 1332.

### Commission of a Tort

To establish the commission of a tort for purposes of the long-arm statute, the Plaintiff must show that "a substantial aspect of the alleged tort" was committed in Florida. See Cable/Home Communication Corp. v. Network Prod., Inc., 902 F.2d 829, 857 (11th Cir. 1990). Because there is no obvious connection between the use of the mark VAX-D on the web sites and the State of Florida, this section does not provide a means for asserting personal jurisdiction over Dr. Gilbertson, particularly when coupled with the failure to establish an agency relationship with his son and the failure to establish Dr. Gilbertson's contacts with Florida other than on behalf of his businesses.

---

[6] In any event, Plaintiff did not allege long-arm jurisdiction under subsection (f)1. in the Second Amended Complaint.

**Substantial and Not Isolated Activity**

Section 48.193(2) is the most difficult to prove, because it requires a showing of continuous and systematic business activities with Florida that are not connected to the claims for relief asserted in this particular case. Subsection (2) is referred to as the general jurisdiction portion of the long-arm statute, as opposed to the previously addressed subsections concerning specific jurisdiction— those considerations where "connexity" exists between the defendant and the lawsuit. There is simply no showing that Dr. Gilbertson conducted continuous and systematic business over a period of time in the state of Florida. Consequently, the Court finds that it may not assert personal jurisdiction over Dr. Gilbertson, based on the affidavits and deposition on file.[7]

It is therefore **ORDERED AND ADJUDGED** that Defendant Dr. Kenneth Gilbertson's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 114) is **GRANTED in part** and deferred in part until the evidentiary hearing on the remaining issue of service of process scheduled for March 16, 2006**.**

**DONE AND ORDERED** at Tampa, Florida, on March 14, 2006.

       s/ *Richard A. Lazzara*
       **RICHARD A. LAZZARA**
       **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[7] Because Florida's long-arm statute has not been satisfied by Plaintiff, this Court need not analyze the constitutional "minimum contacts" and notions of "fair play."